UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |   |
|---|---|---|
| MARY SOUTHERLAND, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil No. 15-cv-0443 (KBJ) |
| SOC, LLC, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Before this Court at present is Defendants' Motion to Dismiss Plaintiff Mary Southerland's First Amended Complaint. (Defs.' Mot. to Dismiss ("Defs.' Mot."), ECF No. 33.)[1] For the reasons that follow, this Court has concluded that venue is improper in this district for three of the five interrelated claims that appear in Southerland's amended pleading. Thus, Defendants' motion will be **GRANTED IN PART** (to the extent that it seeks a transfer), and the Court will **TRANSFER** the entire case to the Eastern District of Virginia, where venue is proper for all of the claims that Southerland has brought against Defendants.

**I.**

In September of 2011, Defendant SOC, LLC, a corporation that contracts with the Department of State, hired Southerland as an Administrative Logistics Security

---

[1] Southerland filed the initial complaint in this case on March 26, 2015. (*See* Complaint for Damages, ECF No. 1.) On July 18, 2017, she filed an amended complaint but did not title it as such. (*See* Complaint for Damages, ECF No. 22.) On January 21, 2018, Southerland filed the operative complaint, which she titled "First Amended Complaint for Damages[,]" and which appears to be identical to the July 18, 2017 filing. (*See* First Am. Compl. ("FAC"), ECF No. 26.)

Specialist to work at the Baghdad Diplomatic Support Center and the United States embassy compound. (*See* First Am. Compl. ("FAC"), ECF No. 26, at ¶ 4, 14.)[2] SOC sent Southerland to Iraq in December of 2011. (*See id.* at ¶ 15.) Although the complaint lacks a clear chronology of events, Southerland alleges that, throughout her tenure abroad, she repeatedly expressed concerns about SOC's hiring and about its management of security personnel under its contract with the Department of State. (*See, e.g., id.* at ¶¶ 21, 26–27, 30.) Southerland further alleges that when she reported to SOC these concerns about contract compliance, and also complained about alleged sexual harassment, management retaliated against her by changing her position more than eight times, sexually harassing her, and creating a hostile work environment. (*See, e.g., id.* at ¶¶ 22, 30, 54–56, 58, 60, 65, 68–69)

SOC purportedly sent Southerland back to the United States for medical care sometime around the end of May of 2012. (*See id.* at ¶ 70.) A doctor cleared her for return to work about a month later (*see id.* at ¶ 71), but SOC did not return her to work in Baghdad until December of 2012 (*see id.* at ¶¶ 73–74). Southerland claims that SOC's harassment and retaliation continued upon her return to Iraq, until she had a mental breakdown in January of 2013, and flew back to the United States for further medical care. (*See id.* at ¶¶ 74–81, 85–87, 93.) Southerland contends that SOC constructively terminated her on February 10, 2013, and formally ended her employment on September 23, 2013. (*See id.* at ¶ 94.)

---

[2] Defendant Day & Zimmerman, Incorporated is the parent company of Defendant SOC. (*See id.* at ¶¶ 5, 66, 111.) Plaintiff alleges that Day & Zimmerman participated in the investigation of her claims against SOC. (*See id.* at ¶ 66.)

Southerland's complaint alleges five interrelated claims arising out of her time working for SOC in Baghdad. (*See id.* at 30–42.)[3] The first two claims allege gender discrimination, sexual harassment, hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). (*See id.* at 30–36.) The third claim asserts that Defendants' conduct on Southerland's first trip to Iraq gave her Post-Traumatic Stress Disorder and Major Depressive Disorder, disabilities that SOC then failed to accommodate in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111, *et seq.* ("ADA"). (*See id.* at 36–39.) The fourth claim accuses Defendants of intentional infliction of mental and emotional distress ("IIED") "under state law of Nevada and Pennsylvania and/or the District of Columbia[.]" (*See id.* at 2, 39–41.) Southerland's fifth and final claim alleges that SOC retaliated against her for raising her concerns about contract compliance, in violation of the False Claims Act, 31 U.S.C. § 3729, *et seq.* ("FCA"). (*See id.* at 41–42.)

Defendants moved to dismiss Southerland's first three claims under Title VII and the ADA, pursuant to Federal Rule of Civil Procedure 12(b)(3) due to improper venue (*see* Defs.' Mem. in Support of Mot. to Dismiss ("Defs.' Mem."), ECF No. 33-1, at 8–11), or, in the alternative, to transfer the case to the Eastern District of Virginia (*see id.* at 11; Defs.' Reply in Support of Defs.' Mot. ("Defs.' Reply"), ECF No. 36, at 13). Notably, Southerland concedes that venue is improper in this district for three of her five claims, but has asked the Court either to exercise pendent venue over these claims

---

[3] Page-number citations to the documents that the parties have filed refer to the page numbers that the Court's electronic filing system automatically assigns.

or to transfer the case to the Eastern District of Virginia. (*See* Pl.'s Mem. in Opp'n to Defs.' Mot. ("Pl.'s Mem."), ECF No. 35-1, at 25–29.)

**II.**

Congress passed a specific venue provision governing the jurisdictions in which plaintiffs may bring Title VII and ADA claims. Such claims can be brought:

> [1] in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, [2] in the judicial district in which the employment records relevant to such practice are maintained and administered, [] [3] in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice [or] . . . [4] within the judicial district in which the respondent has his principal office.

42 U.S.C. § 2000e-5(f)(3) (Title VII); *id.* at § 12117(a) (incorporating § 2000e-5(f)(3) for ADA claims). Southerland cannot and does not dispute that, under this provision, venue is improper in this district. (*See* Pl.'s Mem. at 25–29 ("Venue is Proper in this District Court for the FCA claims and IIED, *but not for Title VII and ADA [claims]*") (emphasis added)).)

Instead, Southerland asks the Court to exercise pendent venue. (*See id.* at 25–29.) "The pendent venue doctrine is an exception to the general rule that 'a plaintiff must demonstrate proper venue with respect to each cause of action and each defendant.'" *Martin v. EEOC*, 19 F. Supp. 3d 291, 309 (D.D.C. 2014) (quoting *Coltrane v. Lappin*, 885 F. Supp. 2d 228, 234 (D.D.C. 2012)). When at least some of a plaintiff's claims are properly venued, a court may exercise venue over other, improperly venued claims that arise out of a common nucleus of operative fact. *See id.* However, "courts will not apply the pendent venue doctrine to defeat Congress's intention that certain types of claims be heard in specific places." *Id.* at 310.

4

Accordingly, judges in this district have considered pendent venue to be inappropriate for claims governed by the specific venue provision at issue here. *See id.*; *see also Dehaemers v. Wynne*, 522 F. Supp. 2d 240, 249 (D.D.C. 2007) (collecting cases). In other words, "regardless of any common nucleus of facts or considerations of judicial economy," it is well established that "pendent venue cannot be applied to [a plaintiff's] Title VII [and ADA] claim[s]; rather, th[ose] claim[s] must satisfy the conditions of the Title VII [and ADA] venue provision." *Martin*, 19 F. Supp. 3d at 310.

### III.

"When venue is improper, the Court must dismiss the claim or, 'if it be in the interest of justice, transfer [it] to any district or division in which it could have been brought.'" *Ellis-Smith v. Sec'y of Army*, 793 F. Supp. 2d 173, 177 (D.D.C. 2011) (quoting 28 U.S.C. § 1406(a) (alteration in original)). The interest of justice often requires the transfer of a case in lieu of its dismissal, *see Johnson v. Deloitte Servs., LLP*, 939 F. Supp. 2d 1, 6 (D.D.C. 2013), especially where, as here, a plaintiff requests transfer in response to a motion to dismiss for lack of venue (*see* Pl.'s Mem. at 28–29). Moreover, and importantly, "[w]hen venue is improper for a Title VII [or ADA] claim, courts have consistently transferred the entire case, pursuant to 28 U.S.C. § 1406(a), to a judicial district where venue is appropriate for all claims, rather than split a case apart." *Saran v. Harvey*, No. 04-1847, 2005 WL 1106347, at *4 (D.D.C. May 9, 2005).[4]

---

[4] Plaintiff's memorandum in opposition to Defendants' motion asks for transfer under section 1404(a) of Title 28 of the United States Code, under the doctrine of *forum non conveniens*, and also cites cases transferring matters pursuant to section 1406(a). (*See* Pl.'s Mem. at 28–29.) Section 1404 and the related doctrine of *forum non conveniens* are applicable when there are multiple jurisdictions in which a case could be properly heard, unlike the case here. The applicable analysis in the instant case arises under Section 1406(a), which directs courts to dismiss or transfer a case when it is improperly venued.

5

Before transferring the case, this Court must ensure that the transferee court has personal jurisdiction over Defendants. *See James v. Verizon Servs. Corp.*, 639 F. Supp. 2d 9, 15 (D.D.C. 2009). Here, Defendants have conceded as much. (*See* Defs.' Reply at 8 (noting that "both Defendants SOC and Day & Zimmerman are subject to personal jurisdiction in . . . the Eastern District of Virginia").) Moreover, Defendants have represented that such transfer will not prejudice them. (*See id*.) *See also James*, 639 F. Supp. 2d at 15 (explaining that courts may consider prejudice to defendants in determining whether or not to transfer).

Finally, it appears that all of Southerland's claims would be properly venued in the Eastern District of Virginia. Defendants agree that venue is proper in that district for Southerland's Title VII, ADA, and IIED claims. (*See* Defs.' Reply at 8, 13.) And while Defendants do not address proper venue for Southerland's FCA claim—they argue solely that this claim should be dismissed (*see id.* at 8–12)—it appears that the FCA claim can be venued properly in the Eastern District of Virginia as well, pursuant to the generally applicable venue statute. *See* 28 U.S.C. § 1391(b)(2).

**IV.**

For the reasons explained above, this Court concludes that venue is improper in this Court for three of Southerland's five claims, and because all five claims rely on complicated, interrelated factual allegations, it is in the interest of justice to transfer the entire case to a jurisdiction where all claims may be heard jointly. *See* 28 U.S.C. § 1406(a). Accordingly, it is hereby

**ORDERED** that Defendants' Motion to Dismiss is **GRANTED IN PART**, and only to the extent that it requests that the instant case be transferred to the Eastern District of Virginia.  It is

**FURTHER ORDERED** that the entire case shall be so **TRANSFERRED.**  This Court will leave the remaining substantive issues in Defendants' Motion to Dismiss pending, to be resolved by the Eastern District of Virginia (the transferee court).

Date:  January 16, 2019

*Ketanji Brown Jackson*
KETANJI BROWN JACKSON
United States District Judge